


POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 10-62225-B-11 |
| Whitten Pumps, Inc., | DC No. KDG-8 |
| Debtor. | |

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**MEMORANDUM DECISION REGARDING APPLICATION FOR COMPENSATION OF CFO RESOURCES, INC.**

The Debtor submitted an application requesting authorization to pay professional fees and expenses to CFO Resources, Inc. ("CFO"), for work performed as a financial advisor during the Debtor's bankruptcy proceedings (the "Motion"). The court initially continued the Motion and requested clarification of inconsistencies between the Motion and the Debtor's original application for authorization to employ CFO (the "Employment Application"). Specifically, the



court requested an explanation of a $5,000 "retainer" referenced in the Motion. Payment of the retainer had not been disclosed in the Debtor's petition, the statement of financial affairs or in the Employment Application as required by Fed.R.Bankr.P. 2014. In response, the Debtor filed a "supplemental disclosure" explaining the extent of CFO's pre-petition connections with the Debtor. For the reasons set forth below, the Motion will be denied.

This Memorandum Decision contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 328, 330 & 503.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Facts.**

This bankruptcy commenced as a voluntary chapter 11 on October 22, 2010. From the record it appears that the Debtor's counsel, Klein, DeNatale, Goldner, et al. ("KDG") contacted CFO in September 2010 to engage CFO's services as a "business consultant" for the Debtor.[2] On September 21, 2010, the Debtor paid CFO a $5,000 retainer in connection with that engagement. Prior to the bankruptcy, CFO billed and deducted from the retainer $4,622.50 for its pre-petition work. At the time the petition was filed, CFO was still holding $377.50 from that retainer. When it became apparent that the Debtor would have to file bankruptcy, CFO requested an additional payment in the amount of $7,125,50, in order to have a pre-petition retainer of $7,500 in its trust account. However, the

---

[1] Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., applicable to cases filed after October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] CFO had previously performed consulting services for the Debtor in 2004 following confirmation of a chapter 11 plan in the Debtor's prior bankruptcy. This information was not initially disclosed by either CFO or the Debtor; however, due to the passage of time, the court does not view that prior employment as material to its ruling here.

Debtor was unable to make that payment and Amanda McDonald, the Debtor's secretary ("McDonald"), personally paid an additional $5,000 to CFO on the Debtor's behalf.

The Debtor's bankruptcy schedules omitted any reference to pre-petition payments made to CFO: schedule F, the list of unsecured creditors, did not include any obligation owed to McDonald, schedule B, the list of personal property, did not reflect any "property interest" in a retainer held by CFO; schedule G, the list of executory contracts, did not reflect the Debtor's contract for services with CFO; the statement of financial affairs did not list the $4,622.50 payment to CFO during the prior month, or any other time. The court approved CFO's employment by order dated November 15, 2010.

When the Debtor submitted CFO's Employment Application, none of this information was disclosed. The Employment Application was supported by declarations from both McDonald and George Demos, CFO's principal ("Demos"), neither of which disclosed CFO's pre-petition connections with the Debtor. The Debtor subsequently filed a motion to amend the scope of CFO's employment to include real estate brokerage services. That pleading did disclose that CFO had done work for the Debtor following a prior bankruptcy in 2004, but again did not disclose CFO's pre-petition connections with the Debtor in this case. The court approved the requested amendment on November 30, 2010.

The Debtor filed this Motion to approve interim compensation of CFO on December 8, 2010. In the Motion, there was a reference to a "retainer" in CFO's trust account in the amount of $5,377.50. Prior to the hearing on the Motion, on January 3, 2010, the court posted a predisposition to continue the hearing and requested additional information regarding the "retainer" referenced in the Motion. In subsequent pleadings, the Debtor and CFO disclosed the additional information summarized above.

///

**Issues.**

Whether CFO satisfied its obligation to disclose its connections with the Debtor, and specifically its performance of pre-petition services and its receipt of pre-petition retainers totaling $10,000, pursuant to Fed.R.Bankr.P. 2014(a). If not, then the court must decide whether compensation for services rendered prior to full disclosure is appropriate.

**Discussion.**

**CFO's Employment Application Failed to Satisfy the Duty of Disclosure.**

Fed.R.Bankr.P. 2014(a) requires disclosure under penalty of perjury of all relevant facts necessary for the court to determine the applicant's ability to meet the criteria of § 327(a). Specifically, it requires that the application for employment be accompanied by a "verified statement of the person to be employed setting forth the person's connections with the debtor . . . ." Rule 2014(a) is supplemented by Region 17 United States Trustee Program Guidelines, Section 2.1.4., Professional Disclosure, which requires that the professional's verified statement must affirmatively show, *inter alia*, that the professional complies with the requirements of 11 U.S.C. § 101(14) and 327(a).

The disclosure requirements of Fed.R.Bankr.P. 2014(a), are strictly applied and impose an independent duty upon the professional applicant.

> *All facts that may be pertinent* to a court's determination of whether [a professional] is disinterested or holds an adverse interest to the estate must be disclosed. . . . "[Professionals] cannot pick and choose which connections are irrelevant or trivial." . . . "Even conflicts more theoretical than real will be scrutinized."
>
> . . .
>
> Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees.

*Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995) (emphasis in original, citations omitted).

///

4

A professional seeking to be employed under § 327 has an affirmative duty to make a complete and candid disclosure of all facts concerning its transactions with the debtor:

> Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem. The disclosure rules are not discretionary. The duty to disclose is not vitiated by negligent or inadvertent omissions. A court may sanction a professional for disclosure violations regardless of actual harm to the estate.

*Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (9th Cir. BAP 1996), *aff'd*, 139 F.3d 1303 (9th Cir. 1998) (citations omitted).

> Coy, or incomplete disclosures . . . are not sufficient. "[T]he duty is one of complete disclosure of *all facts*[.]" ("The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure*.")
>
> The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions "do not vitiate the failure to disclose." Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate."

*In re Park-Helena Corp.*, 63 F.3d 877 at 881, *cert. denied*, 516 U.S. 1049, 116 S.Ct. 712 (1996)(discussing the principles underlying disclosure requirements of § 329 and FRBP 2016 but noting that the disclosure requirements of FRBP 2014 are applied just as strictly) (emphasis in original, citations omitted).

Failure to make disclosure may result in disqualification of a professional person. If the lack of disclosure is discovered after employment is approved, it may also result in denial and disgorgement of compensation. *In re Hathaway Ranch Partnership*, 116 B.R. 208, 220 (Bankr. C.D. Cal. 1990).

Here, CFO's Employment Application failed to disclose, indeed it included an affirmative statement disavowing any "connections with Debtor, its creditors, any other party in interest . . . except for its employment by Debtor on the terms described in the Engagement Letter."[3] The Engagement Letter makes no reference to the payment of pre-petition retainers, but even so, the court should not have to

---

[3] See the Application By Debtor For Order Authorizing Employment of Business Consultant and Advisor at paragraph 7, filed November 5, 2010. See also the Application of George J. Demos filed in support of the above-referenced Employment Application at paragraph 4. Notably, this statement was omitted from the Declaration of Amanda McDonald filed in support of the Employment Application.

parse through the small print on attached exhibits to discover important facts which should have been candidly disclosed in the Employment Application. The Employment Application was supported by sworn statements from both McDonald and Demos. It was not until the court reviewed the Motion and requested further information regarding CFO's retainer that the required disclosures were made.

KDG accepts full responsibility for the nondisclosure problem and contends that the omission was "inadvertent." KDG argues essentially that the court should overlook the problem and approve CFO's interim compensation because CFO has performed valuable services for the Debtor and because CFO did not have an actual conflict of interest. However, the court cannot make that determination after the fact. The payment of a retainer by a nondebtor gives rise to numerous questions and potential conflict of interest issues. Similarly, the pre-petition payment of services rendered by a professional gives rise to questions regarding the quality of those services and the potential "preferential" nature of the payment. The reason for full and candid disclosure is so that those issues can be fully vetted and resolved at the time of employment. KDG, McDonald and Demos all knew or should have known that the disclosures in the Employment Application were seriously inadequate. By the time the court discovered the problem and requested additional information, it was too late to satisfy the disclosure requirements. "Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed [professionals] proceed *at their own risk*." *Rome v. Braunstein*, 19 F.3d 54, 59 (emphasis in original).

**Conclusion.**

Each year, this court approves dozens of ex parte applications for employment of professionals under the assumption that the applicants and their counsel have provided full disclosure of the facts which bear on the professional's relationship with the debtor and qualifications for employment. Without that trust, the professional employment process would grind to a halt. No bankruptcy judge

can or should condone any erosion of this trust. For this reason, the court vigilantly guards the process and, under appropriate circumstances, denies fees when there is noncompliance with Rule 2014. Based on the foregoing, CFO's motion for interim compensation will be denied.

Dated: January 26, 2011

W. Richard Lee
United States Bankruptcy Judge